**CROCKER NATIONAL BANK, Plaintiff,**

**and**

**T.O.S. Industries, Inc., Intervenor,**

v.

**IDECO DIVISION OF DRESSER INDUSTRIES, INC., Defendant.**

Civ. A. No. H-83-2988.

United States District Court, S.D. Texas, Houston Division.

April 29, 1987.

Arlen Driscoll, Atty. in Charge, Gilpin, Maynard, Parsons, Pohl & Bennett, Houston, Tex., for plaintiff.

Stephen R. Kirklin, Kirklin, Boudreaux & Joseph, Houston, Tex., for intervenor.

James R. O'Donnell, Butler & Binion, Houston, Tex., for defendant.

## MEMORANDUM

HUGHES, District Judge.

TOS Industries, Inc., agreed to buy six drilling rigs from the Ideco Division of Dresser Industries, Inc. Before the six rigs were delivered, TOS told Ideco that it would be unable to pay for them, and Ideco kept the rigs. Crocker National Bank had a security interest in all after-acquired inventory of TOS.

Crocker and TOS contend that (1) TOS acquired title to the drilling rigs when Ideco sent TOS invoices of the sale, and that (2) Crocker's security interest attached to the drilling rigs. Ideco contends that (1) the title to the drilling rigs did not pass from Ideco to TOS because Ideco retained possession of the rigs and (2) Crocker's security interest does not encompass the drilling rigs so that even if title had passed, Crocker has no claim to the drilling rigs or their value. Ideco's possession of the drilling rigs and the engines gives it priority.

*Background.*

In late 1981, Ideco began to send TOS invoices for six rigs. The invoices identified which rigs in Ideco's possession were to be shipped. The payment and delivery terms in the invoices are: (1) thirty or ninety days net and (2) F.O.B. manufacturer or F.O.B. Beaumont, hold for shipping instructions. Ideco sent TOS a letter confirming the agreement in January of 1982. Later, TOS told Ideco that it would not be able to pay for the rigs. In June of 1982, Ideco stopped sending invoices and issued credit memoranda to TOS in the amounts of the purchase prices of the rigs.

Ideco never shipped the drilling rigs. Six Caterpillar engines were sent to the Continental Drilling Company. These engines were components of the drilling rigs. Ideco asked Continental to return the engines to Ideco, and Continental did.

Before the invoicing began, Crocker loaned TOS money. Crocker received a security interest in all TOS after-acquired tubular goods, wellhead equipment, and oilfield supplies.

*Claims.*

Ideco has moved for summary judgment claiming that the Crocker security interest in all TOS after-acquired inventory did not attach to the rigs it had contracted to sell to TOS. Ideco argues that, if a contract was created, its terms required delivery according to TOS's instructions before title to the rigs passed to TOS. Without delivery, TOS never acquired title. Without title having passed to TOS, Crocker's security interest could not attach to the rigs. Even if title passed, Crocker's security interest could not attach since it did not encompass the drilling rigs.

Crocker has also moved for summary judgment claiming that, by the terms of the invoices and by the intention of the parties, a present sale was effected. A present sale does not require actual delivery from the seller to the purchaser for title of the goods to pass; title passes on contracting or as soon as the goods are identified to the contract. Crocker contends that TOS, therefore, acquired title to the drilling rigs upon invoicing. With TOS's acquisition of title, Crocker's security interest attached to the rigs. If no present sale is found, Crocker argues that TOS received sufficient "rights in the collateral" for Crocker's interest to attach. TOS echoes Crocker.

*Summary Judgment.*

The party seeking a summary judgment must establish that: (1) no genuine dispute exists about any material fact, and (2) the law entitles it to judgment. Fed.R.Civ.P. 56(c); *Galindo v. Precision American Corp.*, 754 F.2d 1212 (5th Cir.1984); *Trevino v. Celanese Corp.*, 701 F.2d 397 (5th Cir.1983). Until the movant has properly supported the motion, no response is required. Once this is done, however, to preclude the rendition of a summary judgment, the nonmovant must present evidence demonstrating specific, contested facts that are material to the issues requiring adjudication. Fed.R.Civ.P. 56(e). For this purpose mere allegations or denials will not be sufficient. *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty*

*Lobby, Inc.,* — U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Union Planters Nat. Leasing v. Woods,* 687 F.2d 117 (5th Cir.1982).

### After-acquired Inventory.

Crocker's security interest applies to all TOS tubular goods, wellhead equipment, and oilfield supplies. It is arguable that these drilling rigs are not encompassed by that security interest. For purposes of this motion, the court assumes that these rigs and engines are part of TOS's inventory covered by the security interest.

### The Contract.

There is an issue whether there was a contract for sale of the rigs between Ideco and TOS. A contract results when an offer has been presented and accepted, with consideration flowing between the parties. Ideco contends that no contract existed between TOS and it.

Some of the facts suggest the existence of a contract. Ideco issued invoices for the sale of six drilling rigs, identified by serial number. On January 27, 1982, the president of Ideco sent a letter confirming the existence of the Ideco-TOS agreement for these rigs. When TOS told Ideco that it could not pay for the rigs, Ideco issued credit memoranda to reverse its accounting entry of the sale.

The existence of a contract is a question of fact; however, if there was no contract, TOS and Crocker have no basis for asserting an interest in the rigs. The court will assume that a contract existed.

### Ideco's Possessory Interest.

■ Ideco retained an interest in the goods, through possession, superior to any interest TOS or Crocker could have acquired. Two relevant code provisions place the interest of the possessing party above all others.

A seller may retain the title to goods shipped or delivered to the purchaser; this is a security interest. Tex.Bus. & Comm. Code §§ 2.401(a) and 2.505. This security interest is a purchase money security interest. Tex.Bus. & Comm.Code § 9.107(1). A purchase money security interest is superior to a prior interest in the inventory held by a third party if the purchase money security interest is perfected either by retained possession in the seller or if the conflicting interest holder is notified of the purchase money security interest before the purchaser receives possession of the collateral. Tex.Bus. & Comm.Code §§ 9.305 and 9.312(c). Here, Ideco retained possession of those drilling rigs it had completed. Those rigs not yet completed were not possessed by any party. But, if Ideco has the superior interest in the completed rigs, it must have the superior interest in the uncompleted rigs. Ideco's interest prevails over Crocker's.

■ If Crocker's present sale argument were to be accepted and title to the drilling rigs passed to TOS upon invoicing, Ideco would have been the bailee of TOS's goods. Possession by a bailee cannot be stopped unless strict requirements are met. Tex. Bus. & Comm.Code § 2.705; *In re Samuels & Co.,* 526 F.2d 1238 (5th Cir.1976). That code section, however, does not pertain to a situation where the bailee is also the seller, like here. Ideco, as bailee, perfected its security interest by informing itself it had possession of TOS's goods. *See* Tex.Bus. & Comm.Code §§ 9.304(c) and 9.305. Again, this security interest would be a purchase money security interest since the bailee's possession allows TOS to do with the goods as it wished. Tex.Bus. & Comm.Code § 9.107(2). This purchase money security interest would also be superior to Crocker's security interest since Crocker had received notice of Ideco's interest prior to TOS's receiving possession of the drilling rigs. Tex.Bus. & Comm. Code § 9.312(c).

Other sections evince the seller's superior interest in its property. A seller can stop delivery of goods when it is not paid or the buyer becomes insolvent. Tex.Bus. & Comm.Code §§ 2.703 and 2.705. These sections demonstrate that the rights of a seller, although not paramount in all situations, are substantial and, usually, divest any rights that may be held by others.

Against this presumptive lack of a cognizable interest, TOS argues that the agreement between it and Ideco transferred a

superior interest in the rigs to TOS. TOS claims that upon invoicing title to the rigs was transferred to it. If that argument fails, TOS claims that it obtained sufficient "rights in the collateral" to acquire a prevailing interest in the drilling rigs over that retained by Ideco. Both arguments fail.

*Present Sale.*

■ Crocker contends that the invoices' delivery terms apply to a future delivery by Ideco to a third-party purchaser from TOS and that, upon invoicing, title to the rigs was transferred from Ideco to TOS. Ideco counters that the contract's shipping terms show a sale requiring delivery, at minimum, to a common carrier before title passes. Ideco is correct.

A present sale occurs when "delivery is to be made without moving the goods, ... if the goods are at the time of contracting already identified and no documents are to be delivered...." Tex.Bus. & Comm.Code § 2.401(c). In a present sale, title to the goods passes at the time and place of the contracting.

Even assuming that the goods were identified and no documents were to be delivered between the parties, the statute requires that the parties intend to effect delivery without moving the goods. *Id.* Here, there is no evidence of this requisite intent except the rather plain and usual terms on the invoices; these do not invoke § 2.401(c), but (b).

Crocker urges that the facts of this case establish an agreement for a present sale. *Am. Petrofina, Inc. v. PPG Industries, Inc.,* 679 S.W.2d 740 (Tex.Civ.App.—Fort Worth 1984, writ dism'd by agr.); *Liberty Enter., Inc. v. Moore Transp. Co., Inc.,* 679 S.W.2d 779 (Tex.Civ.App.—Fort Worth 1984), *aff'd,* 690 S.W.2d 570, (1984); *Miles v. Starks,* 590 S.W.2d 223 (Tex.Civ.App.—Fort Worth 1979, writ ref'd n.r.e.), *cert. denied,* 449 U.S. 875, 101 S.Ct. 217, 66 L.Ed.2d 96 (1980). Crocker bases this argument on these facts: (1) Ideco was in the practice of holding bulky equipment on its property after it had been sold until it shipped the goods according to the purchaser's instructions; (2) TOS was in the practice of storing bulky goods it had purchased on the seller's property until TOS sent the seller shipping instructions; and (3) the thirty and ninety days net terms are a credit sale and not a cash sale so payment was not required before TOS's actual possession of the drilling rigs.

Evidence of the practices of Ideco and TOS is parol evidence and is inadmissible unilaterally in sales over $500. Tex.Bus. & Comm.Code § 2.201(a). For the purpose of this motion, the court will take Crocker's three assertions as true and admissible.

■ This evidence could domonstrate a course of performance between the parties. Tex.Bus. & Comm.Code §§ 2.202 and 2.208. The evidence fails. First, for Ideco to store sold goods on its property until it received shipping instructions from the buyer is consistent with sales that must be consummated by delivery, whether it is delivery at Ideco's plant or elsewhere. Further, holding huge equipment for shipping instructions is more a function of transportation costs than intention about title, and the practice does not, in itself, establish that Ideco intended to transfer title in this case. TOS's practice of storing goods that it had purchased on the seller's property is similar.

■ The days-net terms merely establish a credit sale and do not show anything about a present sale. A credit sale cannot be equated with a present sale; a credit sale may require actual delivery from the hands of the seller to the hands of the purchaser while the essence of a present sale is the absence of a requirement of an actual transfer.

■ The express terms of the invoices, in fact, evince the intention not to enter a present sale. The f.o.b. and hold for shipping instructions terms show that a physical transfer of the rigs was required before the sale was consummated. Crocker argues that these terms are not inconsistent with a present sale. That argument is circular because it assumes the existence of a present sale.

*Rights in the Collateral.*

██ TOS must have acquired "rights in the collateral" for Crocker's security interest to apply to the drilling rigs. The question TOS presents is: Does a buyer (1) who has not paid for goods and (2) to whom they have not been delivered have sufficient rights in the goods to grant a security interest in them to another that takes precedence over the manufacturer's retained security interest perfected by possession? The answer is no.

██ A security interest does not attach until: (1) the debtor signs a security agreement covering the collateral, (2) the secured party gives value to the debtor, and (3) the debtor has rights in the collateral. Tex.Bus. & Comm.Code § 9.203(a). The first two requirements are met. The third provision is the problem. Even if Crocker acquired a special property interest from TOS, that interest is inferior to the seller's property interest created by possession.

Excluding the seller's creditors, a seller who has not received payment from or delivered goods to a purchaser has the dominant property interest in the goods. There is nothing in "special property" to suggest those limited interests divest the seller's paramount claim. Nothing "suggests that the special property interest carries paramount rights with it.... The scope and relative priority of that interest depend on other Code sections." Dolan, *The Uniform Commercial Code and the Concept of Possession in the Marketing and Financing of Goods*, 56 Tex.L.Rev. 1147, 1156 (footnotes omitted). Nothing "supports the claim of a creditor of an insolvent buyer who has not paid for indentified, undelivered goods." *Id.* at 1158 n. 56. It would astonish the sellers of the world to discover that a seller who has not parted with goods nor received payment for them has an interest in the goods inferior to the creditor of a holder of an executory contract to buy them.

The fallacy of Crocker's position is made evident through a hypothetical. Assume that Ideco had agreed to build six rigs for TOS, but after completing and identifying them, Ideco announced that it had made a better deal with someone else and breached the contract. This reverses the case facts. TOS would not have a sufficient property interest in the rigs that were identified yet undelivered to sustain a claim for possession against Ideco. TOS would be relegated to a breach of contract claim. Conversion would not lie for Ideco's refusal to ship the rigs to TOS without payment because, whatever special property it may have, TOS would not have an unqualified right to possession.

Even if Ideco is considered the bailee of the drilling rigs for TOS, Ideco's right to retain possession is superior to Crocker's security interest. Ideco retained possession of the rigs in whatever capacity and that possession perfected its superior security interest. Ideco needed to do no more.

*The Caterpillar Engines.*

██ If Continental was TOS's bailee, Ideco had the right to stop delivery of the six engines from Continental to TOS. Delivery of the goods to TOS was required before title passed to it. A seller has the right to stop delivery of goods that are in the possession of "a carrier or other bailee" when the buyer repudiates the contract. Tex.Bus. & Comm.Code § 2.703. When TOS informed Ideco that it was impecunious, Ideco correctly intercepted the delivery of the engines. Neither TOS nor Crocker acquired any interest in the engines superior to Ideco's interest.

*Conclusion.*

Since Ideco, whether it is viewed as a bailee for TOS or as an owner, retained and perfected a purchase money security interest in the goods superior to Crocker's conflicting security interest in TOS's inventory, Ideco prevails. Even if a present sale were effected, the security interest of Crocker in after-acquired inventory of TOS is inferior to Ideco's security interest as a possessory unpaid seller. The passage of title and the existence of a special property are not determinative of the priority of claims question. No present sale occurred here since the invoices show a credit sale

with delivery required before title would pass.

Once Ideco was told that TOS would not be able to pay for the rigs, Ideco also had the right to stop delivery of these rigs to TOS. This right included stopping the delivery of the engines from Continental to TOS, with Continental the bailee of TOS.

Crocker's motion for summary judgment will be denied. Ideco's motion for summary judgment will be granted, quieting title to the six rigs and engines in Ideco.

## FINAL JUDGMENT

Crocker National Bank and TOS Industries, Inc., take nothing against the Ideco Division of Dresser Industries, Inc. Costs are taxed against Crocker and TOS.