**CROCKER NATIONAL BANK, Plaintiff,**

v.

**IDECO DIVISION OF DRESSER INDUSTRIES, INC., Defendant.**

**Civ. A. No. H–83–2988.**

United States District Court,
S.D. Texas,
Houston Division.

Dec. 29, 1988.

Tim Leonard, Houston, Tex., for plaintiff.

James R. O'Donnell, Houston, Tex., for defendant.

## MEMORANDUM ON SUMMARY JUDGMENT

HUGHES, District Judge.

This court previously granted summary judgment in favor of Ideco Division of Dresser Industries, holding that its possessory security interest prevailed over the security interest of Crocker National Bank in drilling rigs and in several Caterpillar diesel engines. On appeal, this court's judgment was affirmed on the drilling rigs, and it was remanded on the engines. *Crocker Nat'l Bank v. Ideco Div.*, 839 F.2d 1104 (5th Cir.1988). The court of appeals ruled that it was necessary to determine the relationship of Continental Drilling Company to the parties in this litigation specifically about the engines because the crucial issue was whether Ideco retained possession.

Crocker's security interest in T.O.S. inventory does not attach to the engines. First, the engines were never in the possession of T.O.S. Second, if Crocker had a security interest in the engines, the interest terminated when the engines were returned for full credit to the original vendor. Last, if Continental acted as a bailee at the time the contract was repudiated, Ideco had never relinquished possession of the engines to T.O.S. Accordingly, Ideco's motion for summary judgment will be granted.

*Facts.*

Crocker National Bank was the holder of a security interest in all of T.O.S.'s inventory wherever located, accounts receivable, general intangibles, and returned goods. Ideco is the unpaid seller of the engines sold to T.O.S. Ideco invoiced T.O.S. on 30–day terms, noting a tax exempt sale for resale. Simultaneously, T.O.S. invoiced its customer Continental for the engines. In December 1981, Ideco shipped the engines directly to Continental at a storage facility used jointly by T.O.S. and Continental.

The engines remained at the storage facility until July 1982, when Ideco issued credit memoranda, executed a mutual release of contract with T.O.S., and retook possession of the engines.

*Possession and Placement.*

■ According to Ideco's invoice, which also was incorporated into T.O.S.'s invoice to Continental, the engines were shipped to Continental Drilling Company at Highway 155 North, Tyler, Texas. The actual delivery of the engines was to Continental, not to T.O.S. T.O.S. did not have possession of the engines to allow Crocker's security interest to attach. The engines were never a part of T.O.S.'s inventory.

The engines were shipped to Continental at a storage facility used jointly T.O.S. and Continental. The delivery of the engines to a dual capacity yard does not produce a possessory interest in T.O.S. to which Crocker's security interest can attach.

*Return.*

■ Assuming T.O.S. had actual possession of the engines, making them a part of T.O.S.'s inventory, the security interest still does not subsist. The security and loan agreement states that all of T.O.S.'s inventory is to be stored at specific locations and that T.O.S. will not, without first obtaining Crocker's written consent, remove the inventory from that location except for the purposes of sale in the regular course of its business. The return to the original vendor of the engines for full credit is a sale or exchange in the ordinary course of business. T.O.S. did not need Crocker's consent to return the engines to the original vendor for full credit. The exchange of the engines for full credit was authorized by the Crocker security agreement because the return of the engines was in the ordinary course of business. Inventory adjustment is a normal business operation which has only minimal potential for abuse to the detriment of the individual lender. Any interest Crocker had terminated at the return of the engines to Ideco. When Ideco obtained possession of the engines, Crocker and T.O.S. relinquished any claim to the engines.

*Bailment.*

■ Alternatively, if Continental was the bailee for the engines, Ideco had the

right to stop delivery of the six engines from Continental to T.O.S. Delivery of the goods to T.O.S. was required before title passed to it. A seller has the right to stop delivery of goods that are in the possession of a carrier or other bailee when the buyer repudiates the contract. Tex.Bus. & Comm.Code § 2.703. When T.O.S. informed Ideco that it was impecunious, Ideco correctly intercepted the delivery of the engines. Neither T.O.S. nor Crocker acquired any interest in the engines superior to Ideco's interest.

*Value.*

The actual value of the engines is a fact disputed by Crocker and Ideco. It will become useful only if Crocker is held on appeal to have obtained a security interest in the engines. Since on remand the evidence has already been taken, the finding of their value is made to obviate another remand. On the day they were returned to Ideco, the Caterpillar engines had an aggregate fair market value of $1,332,340.

Judgment will be granted for Ideco.