889 F.2d 1452
 10 UCC Rep.Serv.2d 573
 CROCKER NATIONAL BANK, Plaintiff-Appellant, Cross-Appellee,
and
T.O.S. Industries, Inc., d/b/a Texas Oilfield Supply,
Intervenor-Appellant, Cross-Appellee,
v.
IDECO DIVISION OF DRESSER INDUSTRIES, INC.,
Defendant-Appellee, Cross-Appellant.
 No. 89-2149.
 United States Court of Appeals,
Fifth Circuit.
 Nov. 29, 1989.
Rehearing Denied Jan. 11, 1990.
 
 Tim S. Leonard, David Scott Curcio, Kirklin & Boudreaux, Houston, Tex., for plaintiff-appellant, cross-appellee.
 James R. O'Donnell, Kevin F. Risley, Jeannette M. McAllister, Butler & Binion, Houston, Tex., for defendant-appellee, cross-appellant.
 Appeals from the United States District Court for the Southern District of Texas.
 Before WISDOM, JOHNSON and HIGGINBOTHAM, Circuit Judges.
 PER CURIAM:
 
 
 1
 This diversity case presents the question whether under the Texas U.C.C. a sale of a debtor's inventory has occurred when (1) the alleged buyer is an affiliate of the debtor, (2) the debtor takes delivery of the inventory from its seller at a facility it shares with the affiliate, (3) the debtor never pays its seller and the affiliate never pays the debtor, and (4) the debtor later transfers the inventory back to its seller in exchange for a release. We must resolve this question in order to determine whether the debtor's secured party here has priority over the unpaid seller with respect to the inventory. We also must determine whether the transfer back to the seller extinguished the security interest.
 
 
 2
 Crocker National Bank, the secured party, and T.O.S. Industries, the debtor, appeal the district court's judgment that Crocker was not entitled to recover the value of certain engines subject to their security agreement. T.O.S. transferred the engines back to the seller, Ideco Division of Dresser Industries. We reverse the judgment of the district court and render judgment for Crocker on its conversion claim against Ideco. The district court found the value of the engines to be $1,332,340.00. We reject Ideco's argument that this finding was clearly erroneous.
 
 
 3
 * T.O.S. Industries was a supplier of oil field equipment. Crocker National Bank perfected a security interest under Article 9 of the Texas Uniform Commercial Code in all of T.O.S.'s after-acquired inventory.
 
 
 4
 Later, Ideco agreed to sell T.O.S. some drilling rigs and engines, which T.O.S. in turn planned to sell to its affiliate, Continental Drilling Company. T.O.S. later informed Ideco it did not need the rigs. Ideco delivered the engines to a facility in Owentown, Texas jointly owned by T.O.S. and Continental. The facility was identified in the Crocker-T.O.S. security agreement as a location of T.O.S.'s inventory. The shipment papers indicated the shipment was to Continental, but Ideco sent the invoices to T.O.S. T.O.S. in turn sent invoices to Continental.
 
 
 5
 T.O.S. did not pay Ideco for the engines or the rigs, and Continental never paid T.O.S. for them. T.O.S.'s financial fortunes were declining, so it made a massive transfer of its inventory to its creditors. At the same time, the engines were transferred back to Ideco, and Ideco gave T.O.S. credit memoranda and a release from its obligation.
 
 
 6
 Crocker, which had not specifically approved either T.O.S.'s proposed sale to Continental or the transfer of the engines back to Ideco, filed a complaint in conversion against Ideco in the district court. Crocker sought to recover the value of the engines and the rigs, claiming its security interest had priority over Ideco's interest as an unpaid seller. T.O.S. intervened as debtor in possession, seeking to avoid the transfer to Ideco pursuant to 11 U.S.C. Sec. 547(b). The district court granted summary judgment on all the claims in favor of Ideco, and Crocker and T.O.S. appealed. We affirmed the summary judgment only with regard to the rigs, and remanded the case to the district court to determine whether Ideco retained a possessory interest in the engines superior to Crocker's security interest. Crocker National Bank v. Ideco Division of Dresser Industries, 839 F.2d 1104 (5th Cir.1988).
 
 
 7
 On remand, the district court rendered judgment in favor of Ideco, even though it found Ideco surrendered its possessory interest when it delivered the engines to the Owentown facility. The court gave several alternative grounds to support its decision. First, it concluded that Ideco delivered the engines to Continental, so T.O.S. never had possession and Crocker's security interest never attached. Second, the court held that even if T.O.S. had possession, Crocker's security interest was extinguished when T.O.S. returned the engines to Ideco. Third, the court held that if Continental held the engines as Ideco's bailee, Ideco properly exercised its rights as bailor by stopping the delivery from Continental to T.O.S. Crocker National Bank v. Ideco Division of Dresser Industries, 702 F.Supp. 615, 616-617 (S.D.Tex.1988). Crocker and T.O.S. again appealed.[1]
 
 II
 
 8
 We take a different view of the transaction than did the district court. We hold that the district court's finding that the engines were delivered to Continental instead of T.O.S. was clearly erroneous, as was its alternative holding that Continental took delivery as bailee. Ideco's contract was with T.O.S. and it sent its invoices to T.O.S. T.O.S. stored its inventory at the Owentown facility. When the engines were returned, T.O.S., not Continental, received the credit memoranda and the release. We are thus persuaded T.O.S., not Continental, returned them. The shipping papers merely reflected T.O.S.'s plan that Continental would have use of the engines. Under this view, Crocker's security interest in the engines attached when they were delivered to Owentown. Tex.Bus. & Comm.Code Ann. Sec. 9.203 (West.Supp.1989). Crocker's right to the engines as holder of a perfected security interest was superior to Ideco's claim as an unpaid seller no longer in possession. Matter of Samuels & Co., 526 F.2d 1238 (5th Cir.), cert. denied, 429 U.S. 834, 97 S.Ct. 98, 50 L.Ed.2d 99 (1976); Villa v. Alvarado State Bank, 611 S.W.2d 483 (Tex.Civ.App.--Waco 1981, no writ). Ideco does not challenge the district court's holding that it surrendered its possessory interest at the time of delivery.
 
 
 9
 Instead, Ideco argues that T.O.S.'s alleged sale to Continental or its return of the engines to Ideco or both, were sales authorized by the security agreement that extinguished Crocker's security interest under Sec. 9.306(b). The security agreement authorized T.O.S. to sell the collateral in the ordinary course of its business.
 
 
 10
 We are not persuaded that either transaction was sufficient to extinguish Crocker's security interest. There was insufficient evidence of a sale between T.O.S. and Continental. The Code defines a sale as the passing of title from a seller to a buyer for a price. Tex.Bus. & Comm.Code Ann. Sec. 2.106 (Vernon 1968). The engines were delivered to T.O.S. at Owentown and they were never moved. Continental never paid for them. The only evidence of a sale was the set of invoices T.O.S. sent to Continental, and the notation on Ideco's shipping documents that indicated delivery was to be made to Continental. This is not fatally inconsistent with there being a sale. See Tex.Bus. & Comm.Code Ann. Sec. 2.401(c) (providing that unless the parties otherwise agree, where delivery is to be made without moving the goods, the goods are already identified to the contract, and no documents of title are to be delivered, title passes at the time and place of contracting). But T.O.S. transferred the engines back to Ideco. It could only have done that if it had title. This evidence persuades us that title never passed from T.O.S. to Continental.
 
 
 11
 Finally, the transfer of the engines back to Ideco was not in the ordinary course of T.O.S's business. The parties agree that the U.C.C. and the security agreement definition of sales in the ordinary course of business are the same. Section 1.201(9) excludes from the definition of "buyer in ordinary course of business" one who receives the property "in total or partial satisfaction of a money debt." Ideco received the engines in satisfaction of the money debt T.O.S. owed, so this sale does not qualify. See Chrysler Credit Corporation v. Malone, 502 S.W.2d 910 (Tex.Civ.App.--Fort Worth 1974).
 
 
 12
 Therefore, we reverse the judgment of the district court and remand to the district court for entry of judgment for Crocker. Compensatory damages for conversion in Texas are measured by the market value of the property at the place and on the day of the conversion. Branham v. Prewitt, 636 S.W.2d 507 (Tex.App.--San Antonio 1982), writ ref'd, n.r.e. 643 S.W.2d 122 (Tex.1983); Hupp v. Brownsville Shipyard, Inc., 515 F.Supp. 546 (S.D.Tex.1981). The district court valued the engines at $1,332,340.00 on the date they were sent back to Ideco. It made this determination based on the invoices Ideco sent T.O.S. and on testimony that this figure represented the value of the engines on the date of the transfer. There was contrary evidence but we do not find the district court's determination to be clearly erroneous. REVERSED and REMANDED.
 
 
 
 [1]
 T.O.S. does not press its claims under 11 U.S.C. Sec. 547(b) on this appeal. It merely adopts Crocker's arguments