John H. COCKRELL, Jr., Appellant,

v.

CITIZENS NATIONAL BANK OF DENTON and the Federal Deposit Insurance Corporation, as Receiver for Citizens National Bank of Denton, Texas, Appellees.

No. 2–89–258–CV.

Court of Appeals of Texas,
Fort Worth.

Nov. 27, 1990.

Rehearing Overruled Jan. 15, 1991.

S. Stewart Frazer and Johnette Oden, Dallas, for appellant.

Coleman & Smith, William L. Smith, Jr., Denton, for appellees.

Before WEAVER, C.J., and JOE SPURLOCK, II and HILL, JJ.

## OPINION

WEAVER, Chief Justice.

Appellant, John H. Cockrell, Jr., brought this suit against the appellee, Citizens National Bank of Denton, the "bank," alleging conversion of personal property and seeking actual and exemplary damages.[1] Both parties claimed a security interest in the property which consisted of certain equipment. The alleged wrongful conversion involves the bank's foreclosure of its security interest and subsequent sale of the equipment. Cockrell had sold his business to certain purchasers, the "Sydnors," who are not parties to this suit, and he claimed a priority purchase money security interest in the equipment.

The security agreement under which the bank held its interest was prior in time, and its security interest affixed to this equipment only under the after-acquired title provisions of such security agreement. Both parties filed financing statements, the bank's having been filed by its predecessor

in interest on May 9, 1985, and Cockrell's having been filed on October 7, 1985. Cockrell's claim that his purchase money security interest had priority over the security interest held by the bank depends upon whether his security interest was perfected at the time the Sydnors received possession of the property or within twenty days thereafter. Tex.Bus. & Com.Code Ann. § 9.312(d) (Tex.UCC) (Vernon Supp.1991).

The case was submitted to a jury which answered all questions in favor of appellant, including Jury Question No. 1 which read as follows:

> Do you find that John H. Cockrell, Jr., filed notice of his security interest with the Secretary of State of the State of Texas at the time that the Sydnors received possession of the collateral or within 20 days thereafter?
>
> ANSWER: "Yes" or "No."
>
> Answer: <u>yes</u>

The trial court granted the bank's motion for judgment non obstante veredicto, found that there was no evidence of probative force to sustain the jury's answer to Jury Question No. 1 and that all other jury questions were rendered immaterial thereby, and entered judgment that Cockrell take nothing. We reverse and render judgment for appellant.

Appellant brings four points of error. Under the first three points he claims the trial court erred in granting the judgment n.o.v. because: 1) appellee's motion for judgment n.o.v. advocated a legal definition of the word "possession"; 2) appellant did not have the burden to prove the meaning of "possession" in legal terms rather than its ordinary meaning; and 3) there was sufficient evidence to support the jury's verdict. Under point four, appellant alleges the trial court erred in failing to render judgment for appellant on the jury verdict because there was sufficient evidence to support such verdict.

Under point of error one, appellant asserts that the bank, in its motion for judg-

1. After this case was submitted on this appeal, the Federal Deposit Insurance Corporation filed a motion asking that it be substituted as appellee in place of the bank. We subsequently entered an order which added the Federal Deposit Insurance Corporation, as receiver for Citizens National Bank of Denton, Texas, as an appellee in this cause.

ment n.o.v., advocated a legal definition of the term "possession" contrary to the position taken by appellee at trial. The purpose of this point of error is not made clear, but in any event the representations as to the position advocated by appellee in its motion for judgment are not supported by the record. Nowhere in the bank's motion for judgment n.o.v. does it refer to or advocate a special definition of the term "possession." The appellant points out that such a position was taken by the appellee in the brief which it submitted to the trial court in support of such motion, but there is nothing in the record to indicate that the granting of the motion by the trial court was founded on any such definition of the term "possession," and appellant has failed to direct us to the portion of the record whereby he may have been harmed by this assertion. Point of error number one is overruled.

Likewise, the purpose of point two is not made clear. Appellant appears to assert that the charge placed on him the burden of proving "possession," according to its legal meaning, rather than by its common, ordinary meaning. The appellant does not direct us to any portion of the record which required him to meet any legal meaning of the term "possession," nor do we find the same in the record. Point of error number two is overruled.

The gist of appellant's appeal is contained in his points three and four which points are addressed together in his brief. Appellant's argument under both of these points is to the effect that the trial court erred in granting judgment n.o.v., and in failing to render judgment in favor of appellant, because there was sufficient evidence before the jury to support the jury's answer to Jury Question No. 1, that is that Cockrell filed notice of his security interest with the secretary of state at the time the Sydnors received possession of the collat-

eral or within twenty days thereafter. The jury's answer to that question, if sustained, is sufficient to establish that Cockrell's purchase money security interest in the equipment was timely perfected and had priority over the security interest claimed by the bank. In this respect, we note that at the trial the parties stipulated that if Jury Question No. 1 was answered in the affirmative then a conversion had been found by the jury. The bank also states in its brief that only one issue is presented on this appeal, and that is whether there is some evidence of probative value to support the jury's answer to Jury Question No. 1. We agree that this is the issue before us.

The jury was not asked to determine a specific date on which the Sydnors received possession of the equipment and it made no such finding. It was asked only if Cockrell filed notice of his security interest with the secretary of state at the time or within twenty days after the Sydnors received possession.

It is undisputed that Cockrell perfected his lien by filing a financing statement with the secretary of state on October 7, 1985. To fall within the twenty-day provision of section 9.312(d), so as to protect the priority of Cockrell's claim, possession of the equipment must have passed to the Sydnors at some time on or after September 17, 1985. Accordingly, we must sustain the judgment n.o.v. in favor of the bank if we determine that there was no evidence, or no more than a mere scintilla of evidence, to support the jury's finding that the Sydnors received possession of the equipment on or after that date.

The evidence shows that Cockrell, as seller, and the Sydnors, as buyer,[2] entered into an agreement dated August 1, 1985, which provided that Cockrell shall sell, assign and transfer to the Sydnors, on the closing date, Cockrell's mini-blind business located

---

**2.** The exhibits show that the seller was Avondale Company, a Texas corporation, which was apparently owned by Cockrell who executed the contract as its president. The buyer is shown to be TBL Inc., a Texas corporation to be formed. The contract was signed by both Kevin R. Sydnor and Richard G. Sydnor, individually and on

behalf of TBL, Inc., a corporation to be formed. For the purposes of this appeal the parties have treated Cockrell as being the seller and the Sydnors as the buyer and we have used the same designation of the parties for the purpose of this opinion.

in Dallas, together with the assets of such business. The assets included certain equipment which is the subject of this lawsuit. On the same date the Sydnors paid $5,000 to Cockrell, as part of the purchase price, and executed a promissory note for the balance, the note being secured by a security interest in the equipment under a security agreement of the same date. Subsequently, the parties executed an amended agreement dated September 18, 1985, which "amends, restates, and replaces" the agreement of August 1, 1985.

Both the agreement and the amendment provided for the closing of the transaction to take place on August 1, 1985, or at such other time as they may agree to in writing. No written agreement changing the closing date is contained in the evidence. Cockrell contends that the closing occurred on October 3, 1985, and the bank claims that the closing occurred on August 1, 1985. We do not consider that a determination of the date on which the transaction was closed is determinative of the issue before us.

None of these documents pertaining to the transaction make any reference to possession or provide for the delivery of possession of the equipment to the buyer, either at the closing or at any other time.

The Sydnors began operating the business on August 1, 1985, and at that time they obviously had some access to the equipment. The equipment remained in the same building where it was located at the time the agreement was signed on August 1, 1985. The bank contends that the Sydnors' access to the equipment and their commencement of operations of the business show conclusively that they received possession of the equipment on August 1, 1985. However, the Sydnors' access to the equipment, and their possession thereof for operating purposes at that time, were not exclusive. Cockrell continued to have access to the equipment until October 3, 1985. The equipment was located in a warehouse or warehouses three doors from where Cockrell continued to operate his office. Cockrell had keys to the office and to the warehouses where the equipment was located. He and two of his employees remained involved in the day-to-day operations of the business, including operating the equipment, and were in and out of the warehouse on a day-to-day basis until October 3, 1985.

Cockrell testified that the Sydnors took possession of the equipment on October 3, 1985. He further testified that after August 1, the parties spent "sixty some odd days in the process of implementing the conditions of the Agreement and the Amended Agreement," that he needed to determine the value of the inventory and particularly the value of the receivables, and that the orders received before August 1 needed to be completed and the payments collected. He stated that he had concerns about delivering possession of the equipment to the Sydnors and testified that "we were very concerned. We had a lot of orders in process, and it was very much an effort to see that these orders were processed and were fulfilled and billed for and collected. And we also had a concern from our major supplier in that regard, because they were not sure about—that they would, in fact, be—their orders would be received, paid for and collected."

When asked what was significant about the date of October 3, 1985, he stated that, "We certainly all considered it to be a significant date. We felt we had made good progress in getting them ready to operate the equipment. And I felt comfortable at that point that we had shared with them everything we could and all the help we could get or the knowledge we had. The most significant thing—or two things that happened on that day was that they told me that they were prepared to make the first payment of the receivables that they collected on our behalf for the orders prior to August the 1st that were our orders to our customers at that point. And they did that. They made that payment to the supplier which was credited to my account with that supplier." He testified that such payment was in the amount of $17,700, and with respect to which payment he further testified that, "We had a moment of great joy when they made the first major hurdle. And at that point, then, we

were ready to give them possession of the equipment."

When asked how the payment related to the date the Sydnors took possession of the equipment, Cockrell testified that, "The only way I could meet my obligation under the contract to pay for the debts prior to that contract date was for them, under the terms of the contract, to collect on the money for that from those sales. And they were doing that during that two-month period. And they managed to collect sufficient monies by the first part of October for us to meet the major obligation we had, which was to pay Bali Blinds, the supplier. And that occurred on October the 2nd."

On October 3, 1985, Cockrell gave the Sydnors the keys to the warehouse in which the equipment was located and locks were then changed. On that date the financing statements covering the equipment were signed and the same were filed on October 7, 1985.

■ The Code contains no definition of the term "possession" as the same is used in section 9.312(d). Likewise, we are not aware of any case law which defines such term, or which furnishes us any guidelines for determining when the debtor "receives possession," under circumstances such as those before us and where none of the documents relating to the transaction touch upon the time, manner, or place for the passing of possession.

In its arguments in response to Cockrell's points of error three and four, the bank refers us to the following cases: *Mark Products U.S. v. Interfirst Bank*, 737 S.W.2d 389 (Tex.App.—Houston [14th Dist.] 1987, writ denied); *Ford Motor Credit Co. v. First State Bank*, 674 S.W.2d 437 (Tex.App.—Tyler), *rev'd per curiam*, 679 S.W.2d 486 (Tex.1984); *State Bank & Trust, Etc. v. First Nat'l Bank*, 635 S.W.2d 807 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.); *In re Automated Bookbinding Services, Inc.*, 471 F.2d 546 (4th Cir.1972); *Brodie Hotel Supply, Inc. v. United States*, 431 F.2d 1316 (9th Cir. 1970); and *Crocker Nat'l Bank v. Ideco Div. of Dresser Indus.*, 660 F.Supp. 186 (S.D.Tex.1987), *aff'd and remanded in part*, 839 F.2d 1104 (5th Cir.), *on remand*, 702 F.Supp. 615 (S.D.Tex.1988), *rev'd and remanded*, 889 F.2d 1452 (5th Cir.1989) (per curiam). None of these cases purport to define the term "possession" as used in section 9.312(d) and neither do they furnish us any guidance as to what evidence might be relevant respecting the question of when the debtor "receives possession."

The charge given to the jury in this case contained no definition of the term "possession." In fact, the bank argued against the jury charge including any definition of the word "possession." It argued that the word should be used in its "common usage and common understanding." Since the bank did not request any legal definition, the word was to be given its usual and ordinary meaning. *Pena v. Ludwig*, 766 S.W.2d 298 (Tex.App.—Waco 1989, no writ); Tex.R.Civ.P. 277. Hence, the jury was within its province to determine whether the Sydnors received possession of the equipment within the time period inquired about.

■ With respect to the issue before us, we hold that possession means that condition of facts under which one can exercise power over property at his pleasure to the exclusion of all other persons. *See Citizens First Nat'l Bank v. Rushing*, 433 S.W.2d 741 (Tex.Civ.App.—Tyler 1968, no writ). While that case did not involve a question of priority among lienholders, we believe that it gives some guidance as to the meaning of the term "possession" for the purpose of our determination in this case. *See also* Black's Law Dictionary 1047 (5th ed. 1979).

We hold that there was probative evidence before the jury to show that the Sydnors did not receive possession of the equipment until October 3, 1985, when Cockrell surrendered the keys to the warehouse where the equipment was located. Points of error numbers three and four are sustained.

The bank by its cross-point raises for the first time the issue that the jury's answer to Jury Question No. 1 was so against the great weight and preponderance of the evi-

dence as to be manifestly unjust. For the purpose of this appeal, we have deemed this point as being timely raised or permitted by Tex.R.Civ.P. 324(c).

■ We first observe that the bank has misstated its claim of error in its cross-point. When the party without the burden of proof on a jury question complains of the jury's adverse fact-finding, that party should phrase his point of error as "insufficient evidence" to support the jury's finding. *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex.1983).

■ When the party having the burden of proof on a jury question appeals from an adverse fact-finding, the point of error challenging the factual sufficiency of the evidence should be that the jury's finding was "against the great weight and preponderance of the evidence." *Id.*

■ However, inasmuch as the supreme court has adopted a liberal rule of reference to the construction of points of error contained in appellate briefs (*see Pool v. Ford Motor Co.*, 715 S.W.2d 629 (Tex.1986) (opinion on reh'g); *O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112, 114 (Tex.1976); and Tex.R.App.P. 74(p)), an inappropriately phrased point of error should be construed as raising a challenge to the factual sufficiency of the evidence. *See, e.g., Muhlbauer v. Muhlbauer*, 686 S.W.2d 366, 368 (Tex.App.—Fort Worth 1985, no writ). *But see Croucher v. Croucher*, 654 S.W.2d 475, 477–78 (Tex.App.—El Paso 1982) (opinion of reh'g), *rev'd on other grounds*, 660 S.W.2d 55 (Tex.1983), wherein the El Paso court held contrary to this conclusion. (Note that the supreme court expressly did not rule on the correctness of this holding. *See Croucher*, 660 S.W.2d at 58.) Hence, we deem the appropriate standard of review is an insufficiency of the evidence standard.

An assertion that the evidence is "insufficient" to support a finding of fact can mean that the evidence supporting the finding is so weak or the evidence to the contrary is so overwhelming that the finding should be set aside and a new trial ordered. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.

1965). We are required to consider all of the evidence in the case in making this determination. *See id.*

We have already discussed above the facts pertaining to this transaction and the evidence tending to show that appellant filed notice of his security agreement when the Sydnors took possession of the equipment or within twenty days thereafter. The bank in its brief directs our attention to the following additional evidence in the record in support of its cross-point: The appellant testified at trial that the business was sold to the Sydnors "on or about August 1, 1985"; the Sydnors were assigned the lease to the warehouse and paid the rent, utilities, and the employees; and the Sydnors were also responsible for the day-to-day receivables and payables of the business.

Kevin Sydnor testified that he had possession of the equipment on August 1, 1985, that he had obtained keys to the building in which the collateral was stored on August 1, and that his employees had possession, custody, and use of the equipment. There was also evidence introduced to show that the Sydnors listed their business address as the warehouse where the equipment was stored.

Although there was conflicting evidence in the record bearing on the question of when the Sydnors received possession of the equipment, we cannot say under the facts before us that there was "insufficient evidence" to support the jury's finding that the appellant had filed notice of his security interest at the time the Sydnors received possession or within twenty days thereafter. The bank's cross-point is overruled.

The jury also found, that: Cockrell made demand on the bank for the return of the equipment; the bank had refused to return the equipment; the reasonable market value of the equipment when sold by the bank on August 27, 1987, was $44,705; with respect to the sale of the equipment, the bank acted with wanton disregard for the rights of Cockrell; and that Cockrell was entitled to recover exemplary damages from the bank in the amount of $15,000. These findings were held by the trial court

to be immaterial due to its finding that there was no evidence to support the jury's answer to Jury Question No. 1. We note that the bank has not attacked any of the jury findings other than the answer to Jury Question No. 1. Having held that there was evidence to support the jury's answer to Jury Question No. 1, we hold that all of the findings of the jury are to be considered for the purposes of this appeal, and we hereby grant Cockrell's request that judgment be rendered in his favor in accordance with the verdict for the amount of the damages found by the jury.

The judgment of the trial court is reversed, and judgment is hereby rendered in favor of appellant, John H. Cockrell, Jr., against the Citizens National Bank of Denton and against the Federal Deposit Insurance Corporation, as receiver for Citizens National Bank of Denton, Texas, in the amount of $59,705 plus all court costs, together with postjudgment interest thereon at the rate of 10% per annum from September 18, 1989, until paid, for which execution shall issue.