Truman O'NEIL, Individually and d/b/a Mesa Mack Sales, Petitioners,

v.

MACK TRUCKS, INC., and Mack Financial Corporation, Respondents.

No. B–5869.

Supreme Court of Texas.

Sept. 29, 1976.

Rehearing Denied Nov. 10, 1976.

Clark, Thomas, Winters & Shapiro, Barry Bishop and Donald S. Thomas, Jr., Austin, W. Dean Hester, El Paso, for petitioners.

Stubbeman, McRae, Sealy, Laughlin & Browder, Harrell Feldt and David K. Brooks, Midland, for respondents.

STEAKLEY, Justice.

We granted writ of error in this case to settle the question of whether the Court of Civil Appeals may consider an appellant's argument that his contention has been established conclusively and as a matter of law when the point of error presenting an issue upon which the appellant had the burden of proof is phrased in terms of there being no evidence to support a contrary finding by the trial court. The Court of Civil Appeals here held that it may not. 533 S.W.2d 832. See to the same effect the writing in *Prunty v. Post Oak Bank,* 493 S.W.2d 645 (Tex.Civ.App.1973, writ ref'd n.r.e.). We hold otherwise under the rule stated in *Fambrough v. Wagley,* 140 Tex. 577, 169 S.W.2d 478 (1943), and disapprove the writing in *Prunty.*

Mack Trucks, Inc. and Mack Financial Corporation, Respondents here, sued Truman O'Neil, Petitioner, on various debts. Mack sought foreclosure of an alleged deed of trust lien against a 4.09 acre tract of land which O'Neil alleged was at all relevant times his business homestead. Trial was to the court and judgment was rendered in favor of Mack Trucks and Mack Financial on all issues. Among other things, the judgment awarded foreclosure of a lien on the 4.09 acre tract of land claimed by O'Neil as his business homestead. On appeal the Court of Civil Appeals severed the homestead issue and remanded this severed cause to the trial

court. The severance and remand was occasioned by the ruling that the implied negative finding of the trial court on the homestead issue was contrary to the great weight and preponderance of the evidence. The trial court judgment was otherwise affirmed.

The severed cause involving the homestead issue is the only matter brought forward by O'Neil in his application for writ of error. As to this, the Court of Civil Appeals ruled that it was without jurisdiction to entertain O'Neil's point of error reading as follows: "There is no evidence to support the trial court's implied finding that the 4.09 acre tract of land was not appellant's business homestead." The Court remarked that this was an issue upon which O'Neil had the burden of proof and ruled that a "no evidence" point so phrased did not invoke appellate review, citing *Prunty, supra.* This Court has, however, adopted a liberal rule with reference to the construction of points contained in appellants' briefs and applications for writ of error and will pass on the merits of a point of error in the light of the statement and argument thereunder. See *Fambrough v. Wagley, supra,* where we said:

"The object of a 'point' in the brief, as provided for in Rule 418, is to call the Court's attention to the question raised and discussed in the brief. . . . If a 'point' is sufficient to direct the Court's attention to the matter complained of, the Court will look to the 'point' and the statement and argument thereunder to determine the question of reversible error."

See also *Brazos River Authority v. City of Graham,* 163 Tex. 167, 354 S.W.2d 99 (1961). Here, O'Neil argued in support of his point as above stated that the record established the homestead character of the property as a matter of law; and that the evidence concerning the homestead character of the tract in question was basically undisputed.

■ We hold that O'Neil's point and argument in the Court of Civil Appeals sufficiently invoked appellate jurisdiction. We will, however, rule on the point and not remand the cause to the Court of Civil Appeals for such purpose. In so doing, we reverse the judgments below in the severed cause involving the homestead issue and render judgment for O'Neil.

Art. 16, § 51 of the Texas Constitution as it read in 1965 provided:

" . . . the homestead in a city, town or village, shall consist of a lot, or lots, not to exceed in value five thousand dollars, at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; * * *"

■ It is well established that the homestead right, when fixed, is an estate in land exempt from execution and not subject to mortgage by the owner; that the quantity and value are limitations upon the homestead when established but form no part of the definition of a homestead; that a business and residence may be on separate lots but are taken together and constitute only one homestead; that if the value exceeds the limitation, the homestead is not destroyed or rendered any less so; and that where a homestead right is asserted and established, a creditor of the homestead debtor seeking to subject any excess value to the payment of his debt must allege and prove such excess value and seek a corresponding partition of the property. *Miller v. Menke's Widow & Heirs,* 56 Tex. 539 (1881); *Hargadine v. Whitfield,* 71 Tex. 482, 9 S.W. 475 (1888); *Rock Island Plow Co. v. Alten,* 102 Tex. 366, 116 S.W. 1144 (1909); *Chalk v. Daggett,* 257 S.W. 228 (Comm.App. 1924); *Cooper Co. v. Werner,* 111 S.W.2d 823 (Tex.Civ.App.1937, no writ).

■ Here Mack sought foreclosure of an alleged deed of trust lien covering the 4.09 acre tract. O'Neil pleaded in defense that the tract was at all relevant times his business homestead and that therefore Mack was not entitled to foreclosure and sale of the 4.09 acre tract. There was no pleading by Mack asserting excess value or seeking to subject the excess in O'Neil's homestead

to payment of his debts or to the voluntary lien. See *Clement v. First National Bank of Paris, Texas,* 115 Tex. 342, 282 S.W. 558 (1926). The judgment of the trial court authorized foreclosure against the entire tract, and no finding may be deemed with respect to excess value.

In support of the contention that his homestead defense was established as a matter of law, O'Neil points to his testimony that he has been married since 1939 and that since 1965 he has operated his only business on the 4.09 acre tract in question.[1] His testimony in this regard was clear, direct and positive, and there are no circumstances in evidence tending to discredit or impeach his testimony. *Gevinson v. Manhattan Construction Co. of Oklahoma,* 449 S.W.2d 458 (Tex.1969); *McGuire v. City of Dallas,* 141 Tex. 170, 170 S.W.2d 722 (1943). Mack contends there was evidence in the record that cast doubt upon the testimony of O'Neil and raised a fact issue; but the testimony of O'Neil and the evidence Mack points to related primarily to the issues of quantity and value, issues not formed by the pleadings of Mack. Illustrative of this evidence is O'Neil's testimony regarding his 1968 designation of his residence as a homestead and his testimony with respect to the value of both the 4.09 acre tract and the residence tract. The general testimony elicited from O'Neil that he engaged in other activities in the nature of farming and real estate investments does not contradict or discredit his otherwise unimpeached testimony that his operation on the 4.09 acre tract constituted his principal business. See *Pfeiffer v. McNatt,* 74 Tex. 640, 12 S.W. 821 (1889); *Thomas v. Creager,* 107 S.W.2d 705 (Tex.Civ.App.—Eastland 1937, writ dism'd). See also McSwain, *The Texas Business Homestead,* 15 Baylor L.Rev. 39 (1963).

Mack also contends that the remand ordered by the Court of Civil Appeals was proper in the interest of justice and argues in support of this contention that the evidence strongly suggested the total value of the alleged homestead, if the 4.09 acre tract is included, exceeded $5,000. Yet Mack also argues that the case was tried on the wrong theory "because plaintiffs (Mack) tried the case consistently on the theory that the tract was not homestead at all." Finally, Mack argues that the issue of excess value

---

1. Q All right. Now when did you actually— when did you purchase this 4.09 acres?
   A In 1964.

   .  .  .  .  .

   Q All right. . . . Now when did your— this 4.— when did you operate, first become operational, on this 4.09 acres?
   A May 1st, 1965.
   Q Okay. Did you, at or about that time, close your location in Lamesa?
   A I did, simultaneously.
   Q All right. From the time you opened in Midland, in 1965, did you operate your business out of any other location?
   A No.
   Q And have you operated continuously at this 4.09-acre site since May 1, 1965?
   A Yes.

   .  .  .  .  .

   Q Have you operated any other businesses of any type since 19—May 1st, 1965?
   A No.

   .  .  .  .  .

   Q Has the operation of Mesa Mack at this 4.09-acre tract been your sole occupation and business since 1965?
   A Yes.

   .  .  .  .  .

   Q Is Mesa Mack a sole proprietorship?
   A Yes.
   Q Was Mesa Mack a sole proprietorship in 1965?
   A Yes.
   Q Has it been a sole proprietorship at all times since 1965?
   A Yes.
   *On cross-examination, Petitioner further testified:*
   Q Okay. Mr. O'Neil, what do you consider to be your present occupation?
   A A Mack truck dealer.
   Q Okay. Do you also make real estate investments?
   A Yes.
   Q And included in your real estate investments, do you have any farms?
   A Yes.
   Q All right. Do you consider yourself a full-time Mack truck man?
   A Yes.
   Q Do you consider that you have any other occupation?
   A No, sir.
   Q Do you consider yourself to be a farmer by profession?
   A No, sir.

was tried by consent. We reject all of these contentions. For reasons no doubt considered advantageous, the pleadings of Mack drew only the issue that the 4.09 acre tract was not the homestead of O'Neil, and there was no attempt by Mack to assume the burden of alleging and proving excess value or of obtaining judgment subjecting the excess to payment of O'Neil's debts.

The judgments of the Court of Civil Appeals and of the trial court are reversed, and judgment is rendered for O'Neil.