IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 





NO. 3-92-542-CV





LINDA DURAN,



 APPELLANT


vs.





THE STATE OF TEXAS,



 APPELLEE


 




FROM THE DISTRICT COURT OF TOM GREEN COUNTY, 119TH JUDICIAL DISTRICT 


NO. CV91-0822-B, HONORABLE DICK ALCALA, JUDGE PRESIDING



 





PER CURIAM

 This is an appeal from a trial-court judgment ordering a residence and real property
forfeited to the State. See Tex. Code Crim. Proc. Ann. art. 59.05(e) (West Supp. 1993). We
will affirm.



I. BACKGROUND


 On May 31, 1991, Officer Wiley Kevin Holloway, Detectives Mickey Jones, Larry
Massey, and Kay Longest, and Sargeant Barry Alwine of the San Angelo Police Department
executed a search warrant at 409 West Avenue U in San Angelo. The officers found drugs and
drug paraphernalia inside the house. Genaro Duran and appellant Linda Duran, who are husband
and wife, own the house. 

 On July 9, 1991, the district attorney filed a first amended notice of seizure and
intended forfeiture of the West Avenue U property. See Tex. Code Crim. Proc. Ann. art. 59.04(b)
(West Supp. 1993). Linda Duran filed a verified answer. (1) Following a nonjury trial, the trial
court rendered judgment ordering the Duran residence and real property forfeited to the State. 
The Durans filed a motion for new trial that the trial court denied. Pursuant to the Durans'
request, the trial court made findings of fact and conclusions of law. Linda Duran (2) appeals the
forfeiture of her community interest in the property. (3) We need not determine if Linda's
characterization of her one-half interest as "community" property is correct, because regardless
of the character of her interest, the result in this cause is the same. Accordingly, we understand
Linda to appeal the forfeiture of her interest in the property.



II. DISCUSSION


A. Sufficiency of the Evidence

 In her first point of error, Linda asserts that the trial court erred in granting
judgment forfeiting the residence to the State because there was no evidence or, alternatively,
insufficient evidence to support the finding of fact and conclusion of law that she knew or should
have known that Genaro was using the residence to conduct a drug operation. This complaint is
directed at the trial court's finding of fact number eighteen and conclusion of law number four. 
Finding of fact number eighteen recites that "Linda Duran knew or should have known that
Genaro Duran was using the home to operate his drug operation, to-wit: Possession with intent
to weigh, package and sell heroin and cocaine." Conclusion of law number four recites that
"Linda Duran knew or should have known that Genaro Duran was using the property to commit
a felony under Texas Health & Safety Code Annotated. Sec. 481, Texas Code of Criminal
Procedure Sec. 59.02(c)(1) & (2)." 



 1. Standard of Review

 The trial court's findings of fact are reviewable for legal and factual sufficiency of
the evidence by the same standards that are applied in reviewing the evidence supporting a jury's
answer. Zieben v. Platt, 786 S.W.2d 797, 799 (Tex. App.--Houston [14th Dist.] 1990, no writ). 
As we discuss infra, finding of fact number eighteen is an adverse finding on a defensive issue
on which Linda had the burden of proof. Thus, Linda must attack the sufficiency of the evidence
to support this finding "as a matter of law" or as "against the great weight and preponderance of
the evidence. Raw Hide Oil & Gas, Inc. v. Maxus Exploration Co., 766 S.W.2d 264, 275-76
(Tex. App.--Amarillo 1988, writ denied). We construe her complaints accordingly. O'Neil v.
Mack Trucks Inc., 542 S.W.2d 112, 114 (Tex. 1976) (rule of liberal construction applies to points
in appellant's brief; merits of error will be passed on in light of statement and arguments). 

 In reviewing matter of law points, we must examine the record for evidence that
supports the finding, ignoring any evidence to the contrary. If there is no evidence to support the
finding, we must then examine the entire record to determine if a contrary proposition is
established as a matter of law. Raw Hide, 766 S.W.2d at 276. In reviewing great weight and
preponderance points, we must examine the entire record to determine if there is some evidence
to support the finding, and then determine whether, in light of the entire record, the finding is
manifestly unjust. Id. When both "no evidence" and "insufficient evidence" points are raised,
this Court must consider and decide "no evidence" points first. Cleaver v. Dresser Indus., 570
S.W.2d 479, 483 (Tex. Civ. App.--Tyler 1978, writ ref'd n.r.e.); Robert W. Calvert, "No
Evidence and "Insufficient Evidence" Points of Error, 38 Tex. L. Rev. 361, 369 (1960). 

 Linda may not challenge the trial court's conclusion of law number four on factual
sufficiency grounds, but may attack it as erroneous "as a matter of law." We review the trial
court's conclusion to determine its correctness. Mercer v. Bludworth, 715 S.W.2d 693, 697 (Tex.
App.--Houston [1st Dist.] 1986, writ ref'd n.r.e.), overruled on other grounds, Shumway v.
Horizon Credit Corp., 801 S.W.2d 890, 894 (Tex. 1991). 

 Linda does not challenge the sufficiency of the evidence to support the trial court's
other findings of fact. Findings of fact that are unchallenged are binding on appellant and the
reviewing court. Gibbs v. Greenwood, 651 S.W.2d 377, 380 (Tex. App.--Austin 1983, no writ). 
Finally, because Linda requested that the trial court make findings of fact and conclusions of law,
we will not imply findings to support the judgment or extend an express finding by implication
to cover independent issuable facts. Duncan v. Willis, 302 S.W.2d 627, 634 (Tex. 1957).



 2. Applicable Statutory Provisions

 The statutory basis for the forfeiture of Linda's interest in the residence is found
in chapter fifty-nine of the Code of Criminal Procedure. Article 59.02(a) provides that property
that is contraband is subject to seizure and forfeiture. Tex. Code Crim. Proc. Ann. art. 59.02(a)
(West Supp. 1993). "Contraband" includes real property that is used or intended to be used in
the commission of any felony under chapter 481 of the Health and Safety Code (Texas Controlled
Substances Act). Act of July 19, 1989, 71st Leg., 1st C.S., ch. 12, § 1, art. 59.01(2)(B)(i), 1989
Tex. Gen. Laws 14, 14 (Tex. Code Crim. Proc. Ann. art. 59.01(2)(B)(i), since amended). (4) In
its first conclusion of law, the trial court concluded that "[t]he residence and real property in
question was used by Genaro Duran in the commission of a felony under Texas Health and Safety
Code Annotated, Sec. 481 Tex. Code." Linda has not challenged the correctness of this
conclusion of law. Thus, the residence and real property are contraband and subject to forfeiture
unless an exception or defense applies. Linda relies on the defense provided by article 59.02(c). 
Tex. Code Crim. Proc. Ann. art. 59.02(c) (West Supp. 1993). (5)

 Article 59.02(c) provides that an owner's interest in real property may not be
forfeited if the owner acquired the ownership interest before a lis pendens notice was filed under
article 59.04(g) (6) and did not know or should not reasonably have known of the act or omission
giving rise to the forfeiture or that it was likely to occur at or before the time of acquiring the
ownership interest. Linda had the burden of proof on each element of her defense. Mitchell v.
State, 819 S.W.2d 659, 661 (Tex. App.--El Paso 1991, no writ).



 3. Waiver of Complaint

 Linda testified that she and Genaro bought the house in 1975. The act giving rise
to the forfeiture occurred on May 31, 1991. At the time Linda acquired her interest in the home
in 1975, she did not know and reasonably could not have known of the act giving rise to forfeiture
because it had not occurred. Furthermore, even if Linda knew in 1975 that Genaro was a heroin
addict, this is not even a scintilla of evidence on which to base a finding that she knew or
reasonably should have known that it was likely Genaro would possess controlled substances in
the home, in 1991, with the intent to weigh, package, and sell them. 

 The trial court found that Linda knew or should have known that Genaro was using
the home to conduct his drug operation. This finding does not relate to Linda's knowledge at or
before the time she acquired her ownership interest in the home in 1975. (7) Accordingly, the trial
court did not make a finding on the issue of Linda's knowledge at or before the time she acquired
her ownership interest in the house. Nor did the trial court make a finding on any other element
of Linda's defense. When a trial court makes findings that do not establish any element of the
grounds of a defense, the party relying on the defense must file a request for additional findings
to avoid waiver of that defense on appeal. Pinnacle Homes, Inc. v. R.C.L. Offshore Eng'g Co.,
640 S.W.2d 629, 630 (Tex. App.--Houston [14th Dist.] 1982, writ ref'd n.r.e.). Linda did not
request additional findings of fact. Accordingly, she has waived the defense on appeal. 



 4. The Evidence

 Finally, even if the relevant time period under article 59.02(c) is not at or before
the time Linda acquired her ownership interest in the property and the trial court's finding of fact
number eighteen relates to an element of Linda's defense, sufficient evidence supports the finding. 
When the officers executed the search warrant, they found Genaro in the southeast bedroom of
the residence. The officers searched Genaro and found he had open sores on his legs from skin
popping (injecting controlled substances directly into the skin instead of intravenously). In the
southeast bedroom, Detective Jones found two balloons and a syringe cap on the bed and a "stash
can" on the bed headboard. Detective Jones testified that a stash can is a spray can, soft drink
can, oil can, or any can that is disguised to look like a product bought in a store, except that
normally the cans open by unscrewing the bottom and have a compartment inside to conceal items. 
When Detective Jones unscrewed the stash can's bottom he found concealed within several
balloons and a clear plastic baggie containing what proved to be controlled substances. The
officers also found a set of triple-beam scales on the windowsill of the south wall of the bedroom
and a set of "finger" scales (handheld scales than can be used to weigh up to one ounce) on the
windowsill behind the bed headboard. In the bedroom closet, the officers found a box containing
two packages of an unspecified number of syringes. The officers also found a woman's purse,
later identified as Linda's, containing $849 dollars. All of the evidence seized was turned over
to the evidence officer at the scene, detective Larry Massey. 

 Detective Massey testified that he sent the balloons and clear plastic baggie that
detective Jones turned over to him to the Department of Public Safety crime lab. The crime lab's
return indicated that the balloons and baggie contained two quantities of cocaine totaling 13.40
grams in weight. 

 Lieutenant John Sparks is a narcotics expert with the San Angelo Police
Department. Sparks testified that triple-beam scales are generally used to weigh drug substances
because "the way its sold is by weight" and that heroin and cocaine are, for the most part, sold
by weight. Sparks stated that balloons are commonly used to package drugs, such as cocaine and
heroin. Sparks also stated that the street value of a gram of cocaine is $100 and the street value
of the 12.94 grams (the larger of the two quantities found in the southeast bedroom) is $1300. 
It was Sparks's opinion that a person with a bag of balloons, two sets of scales, some syringes,
and 12.94 grams of cocaine possessed the cocaine for resale. 

 Linda testified that she has been married to Genaro (8) for twenty-three years. She
and Genaro purchased the West Avenue U residence in 1975. Linda testified that Genaro has
been a heroin addict for twenty years, almost their entire married life. She also testified that
Genaro is addicted to alcohol and cocaine. Linda further stated that she stayed with Genaro in
the southeast bedroom of the house, which is the master bedroom. She knew the syringes were
in the closet and that the triple-beam scales belonged to Genaro. Linda testified that she had taken
Genaro to the hospital for his infected legs and that Genaro told the doctor the infection was from
"shooting up."

 Based on the evidence recited above, the trial court reasonably could infer that
Linda knew or reasonably should have known that Genaro possessed with intent to sell the
controlled substances found in the southeast bedroom and, thus, that he was using the home to
conduct a drug operation. Accordingly, some evidence exists to support the trial court's finding
of fact number eighteen. 

 The record evidence as a whole includes Linda's testimony that she did not see
Genaro use heroin or cocaine and that he did not use the syringes when she was around. She
testified that she did not consent to Genaro's drug use and is against selling drugs. She further
testified that she did not remember seeing the stash can on the headboard when she left the house
on May 31, 1991, and she did not know what was in it. She did not remember seeing the finger
scales and did not respond when asked if they were hers or Genaro's. Although Linda admitted
knowing that the triple-beam scales were Genaro's, Detective Jones testified that the presence of
scales alone does not indicate they are being used to weigh controlled substances. Linda denied
ever seeing balloons or pieces of balloons in the southeast bedroom. 

 Linda testified that one of her sons gave her approximately $460 of the $849 dollars
found in her purse and that the rest of the money was income from the beauty shop she operated
in a building in back of the house. She testified that nothing made her think that Genaro was
selling drugs; that there was not a lot of traffic in and out of the house; and that she did not see
him use the scales. She was not home when the search warrant was executed. She testified she
did not know and could not have reasonably known of any type of sale of any kind of drug. She
testified she had never been arrested or convicted of anything. (9)

 The trial court, when serving as a finder of fact, is the judge of the credibility of
the witnesses and the weight to be accorded their testimony. Bandas Indus. Inc. v. Employers
Fire Ins. Co., 585 S.W.2d 344, 347 (Tex. Civ. App.--Austin 1979, no writ). The trial court may
disregard the evidence of a particular witness in whole or in part. Harrell v. Sunylan Co., 97
S.W.2d 686, 689 (Tex. 1936); AATCO Transmission Co. v. Hollins, 682 S.W.2d 682, 685 (Tex.
App.--Houston [1st Dist.] 1984, no writ). The officers found 12.94 grams of cocaine, syringes,
balloons, two sets of scales, and a stash can in the southeast bedroom. This evidence points to
the southeast bedroom as the area in the house where Genaro conducted his drug operation. Linda
shared the southeast bedroom with Genaro. Linda had seen the triple-beam scales in the bedroom. 
Some of the drugs and other drug paraphernalia were found in plain view in the bedroom. In light
of this evidence, the trial court may have disbelieved Linda's testimony that although she and
Genaro shared the southeast bedroom, she never saw him use, weigh, package, or sell drugs and
did not know anything about the sale of any drug. On the record before us, we cannot say that
the trial court's finding number eighteen is so against the great weight and preponderance of the
evidence as to be manifestly unjust. Additionally, in light of the evidence, the trial court's
unchallenged fact findings, and our holding that fact finding number eighteen is supported by
sufficient evidence, we are satisfied that the trial court's conclusion of law number four is correct. 
We overrule Linda's first point of error. 



B. Substantive Due-Process Point of Error

 In her second point of error, Linda asserts that "the trial court's finding of fact and
conclusion of law that [she] knew or should have known that her home was contraband[ (10)] . . .
and the resulting judgment forfeiting the home, is an unconstitutional act, as applied to these facts,
and a violation of substantive due process." Based on the arguments in her brief, we construe this
point to complain that under the facts of this case, forfeiting Linda's interest in the residence
pursuant to articles 59.01(2)(B)(i) and 59.02(a) violated her substantive due-process rights. See
O'Neil, 542 S.W.2d at 114 (rule of liberal construction applies to points in appellant's brief;
merits of error will be passed on in light of statement and arguments). 

 The due-course-of-law provision of the Texas Constitution includes procedural and
substantive protections. As applied to substance, due process acts as a restraint on the substance
of legislation and means that a legislative curtailment of personal or property rights must be
justified by a resultant benefit to the public welfare. A.J. Thomas, Jr. & Ann Van Wynen
Thomas, Interpretive Commentary, Tex. Const. art. I, § 19 (West 1984). The due-process
guaranty does not restrain the State in the exercise of its legitimate police powers, but the exercise
of the police powers is not unrestricted. It is limited to enactments referring to the public health,
comfort, safety, and welfare. It must not be arbitrary, unreasonable, or patently beyond the
necessities of the case, and the means that the State employs must have a real and substantial
relation to the object sought to be attained. Id. (citing Spann v. City of Dallas, 235 S.W. 513,
515 (Tex. 1921); Houston & T.C. Ry. v. City of Dallas, 84 S.W. 648, 653 (Tex. 1905); American
Fed'n of Labor v. Mann, 188 S.W.2d 276, 282 (Tex. 1945)); see also State v. Richards, 301
S.W.2d 597, 602 (Tex. 1957) (determining that predecessor forfeiture statute did not violate
substantive due process). 

 In substantive-due-process cases, the courts balance the gain to the public welfare
resulting from the legislation against the severity of its effect on personal and property rights. 
A.J. Thomas, Jr. & Ann Van Wynen Thomas, Interpretive Commentary, Tex. Const. art. I, § 19
(West 1984). It may often become necessary for courts to inquire as to the existence of the facts
upon which a given exercise of the police power rests and into the manner of its exercise, and if
there has been an invasion of property rights under the guise of this power, without justifying
occasion, or in an unreasonable, arbitrary, and oppressive way, to give the injured party that
protection which the Constitution secures. Houston & T. C. Ry., 84 S.W. at 653.

 Linda does not assert that the State has no legitimate interest in protecting the
public health and safety from illicit drug activities or that the statute does not have a real or
substantial relationship to this goal. Rather, Linda argues that the statute is arbitrary and unreasonable because: (1) it pushes a marriage to the point of violence before a defense is
available; (11) (2) application of the statute to a spouse who suspects her husband is participating in
drug activity would require her either to file for divorce or take the children and flee; and (3) if
she had called the police department to give them information leading to Genaro's arrest, her
interest could still be subject to forfeiture. 

 Linda did not raise article 59.05(c) as an affirmative defense in the trial court. Nor
did she allege that she had filed for a divorce, fled the home with the children, or called the police
to report Genaro's drug activities. Thus, her complaints do not relate to the question whether
forfeiture of her property interest is an unconstitutional act as applied to the facts in her case. 
 

 Linda next argues that any gain to the public welfare derived from taking her
property interest is outweighed by the severity of the effect on her personal and property rights. 
Forfeiture of property used or intended to be used in the commission of the felonies enumerated
in article 59.01 acts to deter property owners from allowing their property to be used for criminal
activity and to punish those who permit such use. It is reasonable to conclude that the public
welfare benefits from this scheme because its net effect is to make it more difficult for the criminal
to conduct or conceal his criminal activities. 

 We realize that the dollar value of the benefit accruing to the State from the
forfeiture of Linda's property interest may be modest in comparison to the severity of the loss to
Linda. Linda and her children will lose their home. Linda also stands to lose her business located
on the property. (12) This is an admittedly harsh result. Nevertheless, while it is true that a
forfeiture statute may work a harsh result, this fact alone is not enough to declare such a provision
void. See Richards, 301 S.W.2d at 602-03. (court refused to hold predecessor forfeiture
provision void on substantive-due-process grounds despite court's recognition that statute produced harsh result). As the court in Richards noted, "drastic measures are necessary
to suppress the illicit traffic in narcotics with its disastrous effects upon many members of
society." Id. at 602. 

 There is protection for an innocent owner, but Linda failed to meet her burden
under the defense. Genaro used the house to conduct a drug operation, Linda knew of the
operation, and she did nothing to prevent it. Thus, even though Linda was not charged with an
offense and has never been convicted of any crime, she is not totally without fault. The purposes
underlying the forfeiture are legitimate and the exercise of the police power in this instance, while
harsh, is not excessive. Under the facts in this case, we cannot say that the State exercised its
police power in an arbitrary and unreasonable way. We overrule Linda's second point of error. 




III. CONCLUSION


 The trial court's judgment is affirmed. 


Before Chief Justice Carroll, Justices Aboussie and B. A. Smith

Affirmed

Filed: February 2, 1994

Do Not Publish
1. [1] Although the answer recites that both Genaro and Linda are claimants, only Linda signed
the verification.
2. [2] "Appellants'" brief recites that Linda and Genaro are appellants. Genaro may not prosecute
an appeal because he did not file a perfecting instrument and the complaints related to the
forfeiture of Linda's property interest are not error that injuriously affect him. Linda perfected
her appeal by filing an affidavit of inability to give the costs of appeal. The affidavit states that
Linda desires to take an appeal from the trial court's judgment. Genaro's name does not appear
in the affidavit. See Tex. R. App. P. 40(a)(3)(A). Moreover, "appellants'" prayer for relief
requests that the trial court's judgment be reversed, that judgment be rendered reflecting that the
fifty percent community-property interest in the homestead of appellant Linda Duran is
nonforfeitable, and that the forfeiture proceed according to law and in accordance with her
nonforfeitable interest. Thus, the appeal does not concern error that injuriously affects Genaro. 
See Jackson v. Fontaine's Clinics, Inc., 499 S.W.2d 87, 92 (Tex. 1973) (one may not complain
of errors which do not injuriously affect him or which merely affect rights of others). For the
reasons stated, we conclude that Linda is the only appellant properly before us.
3. [3] The notice of seizure and intended forfeiture also identified $1166 in currency as property
subject to forfeiture. The trial court found that the currency was not contraband and ordered it
returned to the Durans. Linda filed a notice of limitation of appeal, limiting the appeal to that
portion of the trial court's judgment forfeiting the residence. 


 
4. [4] All references to article 59.01(2) (B) are to the statute as it read at the time of the act giving
rise to the forfeiture proceeding. 
5. [5] Linda did not expressly raise this defense in her verified answer. The answer contains a
general denial and asserts that the property is not subject to seizure. Rule 67 permits an
unpleaded issue to be treated as raised in the pleadings when it is tried by express or implied
consent. Tex. R. Civ. P. 67. Trial by consent is intended to apply in the exceptional case in
which it clearly appears from the record as a whole that the parties tried the unpleaded issue. 
Rule 67 is not intended to establish a general rule of practice and should be applied with care and
not in doubtful cases. Ranger Ins. Co. v. Robertson, 707 S.W.2d 135, 142 (Tex. App.--Austin
1986, writ ref'd n.r.e.). We are satisfied from our review of the record as a whole that the parties
tried the issue by implied consent and we will treat it as raised in the pleadings.
6. [6] Article 59.04(g) provides that the attorney representing the state, not later than the third day
after proceedings are commenced, shall file a lis pendens notice describing the property with the
county clerk of each county where the property is located. Tex. Code Crim. Proc. Ann. art
59.04(g) (West Supp. 1993). A forfeiture proceeding commences when the attorney representing
the state files a notice of seizure and intended forfeiture in the name of the state with the clerk of
the district court in the county where the seizure is made. Tex. Code Crim. Proc. Ann. art.
59.04(b) (West Supp. 1993). The state filed its first amended notice of seizure and intended
forfeiture on July 9, 1991.
7. [7] Article 59.02(c)'s plain language provides that the defense rests, in part, on the owner's
knowledge "at or before" the time she acquires her ownership interest. We need not examine here
whether the article as written is consistent with the statute's purpose as a whole because, as
discussed infra, even if the defense is not limited to this time frame, sufficient evidence exists to
support finding number eighteen.
8. [8] Detective Mickey Jones testified that Genaro Duran is also known as Henry Duran. 
Throughout her testimony, Linda referred to Genaro as Henry. However, for convenience, we
refer to Linda's husband as Genaro throughout our opinion.
9. [9] Linda argues that this raises a presumption that her interest in the home is not subject to
forfeiture. See Act of July 19, 1989, 71st Leg., 1st C.S., ch.12, § 1, art. 59.05(d), 1989 Tex.
Gen. Laws 14, 17 (Tex. Code Crim. Proc. Ann. art. 59.05(d), since amended). (evidence of
acquittal raises presumption that property or interest subject of hearing is nonforfeitable). She
argues that because she was never arrested or charged in connection with the drugs and drug
paraphernalia found at her house, she is on an equal footing with a person acquitted. Assuming,
without deciding, that Linda is correct, the presumption is rebuttable by evidence that the owner
knew or should have known that the property was contraband. State v. Park, 820 S.W.2d 948,
950 n.1 (Tex. App.--Texarkana 1991, no writ). 
10. [10] The trial court's second conclusion of law recites that "[t]he residence and real property is
[sic] contraband and therefore subject to forfeiture. Texas Code of Criminal Procedure. 
Art. 59.01(2)(B)(i) and Art. 59.02(a)."
11. [11] See Tex. Code Crim. Proc. Ann. art. 59.05(c) (West Supp. 1993) (providing affirmative
defense to forfeiture of spouse's property interest in limited circumstance involving act of family
violence).
12. [12] The record evidence includes Linda's testimony that she earns her income from her beauty
shop located on the West Avenue U property, which she has had for fourteen years.