**Opinion filed June 12, 2014**



# In The

# Eleventh Court of Appeals

_____

## No. 11-12-00266-CV

_____

# IN THE INTEREST OF A.R. AND B.N., CHILDREN

**On Appeal from the 35th District Court
Brown County, Texas
Trial Court Cause No. CV10-04-123**

## M E M O R A N D U M   O P I N I O N

This appeal is from the denial, by the trial court, of a bill of review in which Appellant, the children's maternal grandmother, sought to set aside the final judgment that terminated parental rights to A.R. and B.N. The associate judge terminated the parental rights of the children's biological parents and the conservatorship rights of Appellant following A.R.'s allegations that Appellant's then-husband, B.M., had sexually abused A.R. while she lived at Appellant's home. We affirm.

## I. *Background Facts and Procedural History*

The facts underlying this appeal began in April 2010 when the Texas Department of Family and Protective Services (the Department) filed its original petition concerning A.R. and B.N.[1]  The suit arose out of allegations that Appellant's then-husband, B.M., had attempted to kiss A.R. and put his tongue in her mouth and that he had committed various inappropriate sexual acts with A.R. Because the children's fathers, J.B.R. and R.R.S., were incarcerated and the whereabouts of the children's mother, G.A.N., were unknown, both A.R. and B.N. were in the care and custody of Appellant.

G.A.N. had left the children in the care of Appellant several years ago and had had only intermittent contact with them.  G.A.N.[2] had a long history of drug abuse and was the subject of abuse and neglect investigations concerning A.R. and B.N.  Both of the children's fathers had had little involvement with them. Appellant had no court-ordered relationship with B.N., but she had been appointed to be a joint managing conservator of A.R.  Prior to A.R.'s outcry, A.R. and B.N. had lived with Appellant for several years without any allegations of abuse or neglect.

The outcry of abuse from A.R. occurred at her elementary school.  A.R. told someone at school that B.M. had tried to kiss her and put his tongue in her mouth. Amanda Combs, a Department caseworker, responded to the outcry of abuse and interviewed A.R.

When Combs later spoke to Appellant at Appellant's home, Appellant did not believe A.R. and said that A.R. was lying because she wanted to live with her

---

[1]A.R. was eight years old at the time of the allegations, and B.N. was five years old.

[2]G.A.N. had run away from Appellant and was reared at Cal Farley's Ranch from the age of eleven to the age of eighteen; Appellant reported that G.A.N. said she had been sexually abused by Appellant's first husband, who was G.A.N.'s biological father.

2

mother and had claimed abuse after watching a television show about child abuse. Appellant claimed that A.R. was just emulating what she had seen on television. A.R. had also reported to Combs that A.R. told Appellant about the abuse, that Appellant told B.M. to stop kissing the girls, and that B.M. did not stop. Combs informed Appellant that the children would be removed from the home unless B.M. left. Appellant continued to deny that A.R. had been abused, and she said that B.M.[3] would not leave the home. The Department removed A.R. and B.N. from the home and filed a protection, conservatorship, and termination petition.

The Department alleged there was a continuing danger to the health and safety of the children because of the allegations of inappropriate sexual contact with the children and because of Appellant's failure to protect the children. The associate judge entered an Emergency Order of Protection and set a temporary orders hearing for April 26, 2010. On that day, the associate judge held a full adversary hearing and appointed the Department temporary managing conservator of the two children with limited possessory conservatorship to the parents and Appellant. After several progress reports and hearings, the associate judge set a final hearing date.

The associate judge ordered the parties to mediate the case. Appellant attended the mediation with her counsel, Terry M. Norman, and she actively participated. Appellant was one of the parties that executed the Mediated Settlement Agreement (MSA) on March 18, 2011. The MSA included a provision that Appellant would abandon her opposition to the termination proceeding. The MSA also included a provision, which was printed in bold, capital, and underlined letters, that the MSA was not subject to revocation.

---

[3]Although B.M. was never arrested for the alleged abuse of A.R., Appellant later divorced him.

3

The associate judge called the case for final hearing on April 4, 2011. A jury was waived, and a Rule 11[4] agreement was entered in open court and noted in the record. Appellant was present with counsel, did not object to the Rule 11 agreement, and agreed to it. The associate judge recessed the hearing to allow the parties to complete the terms of the Rule 11 agreement. Two weeks later, Norman presented a motion to declare the MSA void because of an ambiguity and because Appellant was forced, under duress, to sign the MSA, which she claimed was procured by fraud and not in the best interest of the children.

The trial court resumed the final hearing on April 25, 2011, heard evidence on Appellant's motion, and then recessed until May 11, 2011. On that day, the associate judge denied Appellant's motion and held that the Rule 11 agreement cured any ambiguities in the MSA. He also ruled the MSA was in the best interest of the children and entered an order terminating the parental rights of G.A.N., J.B.R., and R.R.S. and the rights of Appellant. The associate judge signed the termination order on May 16, 2011; Appellant filed a pro se request for "appeal" on May 27, 2011, but did not pursue a direct appeal to the court of appeals.

On June 29, 2011, Attorney David Sergi entered a notice of appearance for Appellant; Norman filed an amended motion to declare the MSA void on July 8, 2011, and later moved to withdraw from representing Appellant; the latter request was granted. On August 19, 2011, Sergi filed a notice requesting a setting on the de novo appeal. On August 25, 2011, Sergi filed an amended notice of appeal seeking a de novo appeal in the district court; a hearing was set before the trial court on October 25, 2011. The trial court sustained an objection to the de novo appeal, but an order was never entered.

On November 15, 2011, Appellant filed her bill of review. The trial court conducted a trial on the merits of the bill of review and subsequently denied the

---

[4]TEX. R. CIV. P. 11.

bill of review by a final order signed on June 29, 2012. The trial court entered findings of fact and conclusions of law on July 27, 2012.

Appellant argues that the trial court should have granted her bill of review because she failed to understand the nature of the allegations against her ex-husband, the nature of the termination proceeding, and the effect of the mediation on her rights to the children. But the record showed that Appellant well knew of the allegations against her ex-husband, reviewed the MSA with counsel before she signed it, and agreed to the Rule 11 agreement in open court.

Appellant claims that her disabilities—which include a hearing loss, dyslexia, and limited reading comprehension—combined with stress and anxiety, prevented her from understanding the effects of the MSA and the Rule 11 agreement. Appellant argues that the State of Texas failed to accommodate her disabilities, as required by law. Appellant also argues that her counsel, Norman, failed to adequately explain the MSA to her; failed to adequately explain other procedures and deadlines; and failed to secure accommodations for her and that, as a result, he was ineffective as her counsel in the underlying case.

## II. *Issues Presented*

Appellant presents four issues on appeal. First, Appellant asserts that the trial court erred when it ruled that she failed to present a prima facie meritorious defense. Second, she claims that the trial court erred when it found insufficient evidence to show that extrinsic fraud by others had prevented her from presenting her meritorious defense. Third, she argues that the trial court erred when it found she had failed to show that her failure to present a meritorious defense was not due to her own negligence. Fourth, she argues that Finding of Fact No. 38 relies on minute entries from the clerk that do not comply with Rule 20 of the Texas Rules of Civil Procedure. Appellant asserts that such entries are void and of no effect because the minutes were not "read, corrected, and signed in open court."

### III. *Standard of Review*

A bill of review is an equitable proceeding to set aside a judgment that is not void on the face of the record but is no longer appealable or subject to a motion for new trial. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751–52 (Tex. 2003) (citing *Baker v. Goldsmith*, 582 S.W.2d 404, 406 (Tex. 1979); and *Schwartz v. Jefferson*, 520 S.W.2d 881, 889 (Tex. 1975)). We review a trial court's judgment granting or denying a bill of review for abuse of discretion. *Manley v. Parsons*, 112 S.W.3d 335, 337 (Tex. App.—Corpus Christi 2003, pet. denied). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985); *see also City of San Benito v. Rio Grande Valley Gas Co.*, 109 S.W.3d 750, 757 (Tex. 2003).

A trial judge's findings of fact following a hearing on a bill of review have the same force and effect as jury findings. *Nadolney v. Taub*, 116 S.W.3d 273, 279 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). We review a trial judge's findings of fact in a bill of review proceeding using the same standards we use to review the sufficiency of the evidence to support a jury's answers. *Id.*

When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which it does not have the burden of proof, that party must demonstrate on appeal that there is no evidence to support the adverse finding. *Id.* (citing *Croucher v. Croucher*, 660 S.W.2d 55, 58 (Tex. 1983); and *Price Pfister, Inc. v Moore & Kimmey, Inc.*, 48 S.W.3d 341, 347 (Tex. App.—Houston [14th Dist.] 2001, pet. denied)). A court will sustain a legal sufficiency point when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite

of a vital fact. *Id.* (citing *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). We consider all evidence in the light most favorable to the finding, indulging every reasonable inference in favor of the prevailing party. *Id.* (citing *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 285–86 (Tex. 1998)). When, however, the party having the burden of proof appeals from an adverse fact finding in the trial court, the point of error should be that the matter was established as a matter of law or that the jury's finding was against the great weight and preponderance of the evidence. *Croucher*, 660 S.W.2d at 58 (citing *O'Neil v. Mack Trucks, Inc.*, 542 S.W.2d 112 (Tex. 1978)). In conducting a factual sufficiency review, we must examine the entire record, considering both the evidence in favor of, and contrary to, the challenged finding. *Nadolney*, 116 S.W.3d at 279 (citing *Mar. Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406–07 (Tex. 1998)). We set aside a trial judge's finding on factual insufficiency grounds only if it is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. *Id.* (citing *Ortiz v. Jones*, 917 S.W.2d 770, 772 (Tex. 1996)).

IV. *Discussion and Analysis*

Upon expiration of the trial court's plenary power, a judgment cannot be set aside by the trial court except by bill of review for sufficient cause, filed within the time allowed by law. *See* TEX. R. CIV. P. 329b(f). A petition for bill of review may be brought to attack an order terminating parental rights. *Durham v. Barrow*, 600 S.W.2d 756, 760 (Tex. 1980). Although it is an equitable proceeding, the fact that an injustice has occurred is not sufficient to justify relief by bill of review. *Jon v. Stanley*, 150 S.W.3d 244, 246 (Tex. App.—Texarkana 2004, no pet.).

The grounds upon which a bill of review can be obtained are narrow because the procedure conflicts with the fundamental policy that judgments must become final at some point. *King Ranch*, 118 S.W.3d at 751 (citing *Alexander v. Hagedorn*, 226 S.W.2d 996, 998 (Tex. 1950); and *Crouch v. McGaw*, 138 S.W.2d

7

94, 96 (Tex. 1940) (noting that a bill of review requires "something more than injustice")). Furthermore, a bill of review is proper where a party has exercised due diligence to prosecute all adequate legal remedies against a former judgment, and when the bill of review is filed, there remains no such adequate legal remedy still available to petitioner. *Id.* (citing *Baker*, 582 S.W.2d at 408).

A petitioner for bill of review must plead and prove (1) a meritorious defense to the cause of action alleged to support the judgment; (2) that the petitioner was prevented from making her meritorious defense by the fraud, accident, or wrongful act of the opposing party; and (3) unmixed with any fault or negligence of the petitioner. *King Ranch*, 118 S.W.3d at 751–52; *see also In re G.N.H.*, No. 11-05-00405-CV, 2006 WL 3094354 (Tex. App.—Eastland Nov. 2, 2006, no pet.) (mem. op.); *Thompson v. Tex. Dep't of Protective & Regulatory Servs.*, 123 S.W.3d 580, 581–82 (Tex. App.—El Paso 2003, pet. denied). The petitioner must show that she has a prima facie meritorious defense that is not barred as a matter of law and that she will be entitled to judgment on retrial if no contrary evidence is offered. *Baker*, 582 S.W.2d at 408–09. If the petitioner does not show that she has a prima facie meritorious defense, the trial court shall dismiss the case. *Id.* at 409.

If, on the other hand, a prima facie showing of a meritorious defense has been made by the petitioner, the court should conduct a trial at which the petitioner must open and assume the burden of proving that the judgment was rendered as a result of the fraud, accident, or wrongful act of the opposing party or official mistake unmixed with any negligence of her own. *Id.* At the trial, the bill of review defendant has the burden to prove its original cause of action. *Id.* The factfinder must first determine whether the petitioner has met her burden to establish by a preponderance of the evidence that the prior judgment was rendered as a result of fraud, accident, or wrongful act of the opposing party or official

8

mistake unmixed with negligence on the petitioner's part. *Id.* If the petitioner has met that burden, then the factfinder will then consider whether the opposing party has proved its original cause of action.

### A. Issues Two and Three

Because the trial court found that Appellant had presented a prima facie meritorious defense, it conducted a trial on the merits. At this point in the proceeding, Appellant had the burden to prove that she was prevented from making her meritorious defense by the fraud, accident, or wrongful act of the Department or by an official mistake and that she was not negligent. *King Ranch*, 118 S.W.3d at 752–53; *Baker*, 582 S.W.2d at 406.

#### 1. Fraud, Accident, Wrongful Act of Opposing Party or Official Mistake

Appellant did not allege that there was an official mistake and did not allege an accident by anyone. Appellant asserted that the Department engaged in extrinsic fraud or wrongful conduct when it made false promises to Appellant in the MSA in order to induce her to sign the MSA. She also claimed that the Department failed to ascertain and accommodate her dyslexia and hearing and reading impairments.

Fraud in its relation to attacks on final judgments is either extrinsic or intrinsic. "Extrinsic fraud" is fraud that denied a party the opportunity to fully litigate upon the trial all the rights or defenses she was entitled to assert. *King Ranch*, 118 S.W.3d at 752; *Tice v. Pasadena*, 767 S.W.2d 700, 702 (Tex. 1989). Extrinsic fraud generally includes wrongful conduct occurring outside of the adversarial proceedings. *Browning v. Prostok*, 165 S.W.3d 336, 347 (Tex. 2005). The fraud must be collateral to the matter tried and not something that was actually or potentially in issue. *Id.* (citing *Montgomery v. Kennedy*, 669 S.W.2d 309, 312 (Tex. 1984)). One example of extrinsic fraud would be a fiduciary's concealment

9

of material facts to induce an agreed or uncontested judgment, which prevents a party from presenting his legal rights at trial. *Id.* (citing *Montgomery*, 669 S.W.2d at 313). Another example is where a mother induced the father to sign a relinquishment order for his child in order for the mother to give the father "a second chance" to reconcile. *In re G.N.H.*, 2006 WL 3094354, at *2. When the father signed, the mother moved to terminate his parental rights, and the appellate court reversed on a bill of review because of the extrinsic fraud. *Id.* at *2–3.

"Intrinsic fraud," by contrast, relates to the merits of the issues that were presented and presumably were or should have been settled in the former action. *King Ranch*, 118 S.W.3d at 752; *Tice*, 767 S.W.2d at 702. Within that term are included such matters as fraudulent instruments, perjured testimony, or any matter that was actually presented to and considered by the trial court in rendering the judgment assailed. *Tice*, 767 S.W.2d at 702. "Issues underlying the judgment attacked by a bill of review are intrinsic and thus have no probative value on the fraud necessary to a bill of review." *King Ranch*, 118 S.W.3d at 752 (citing *Tice*, 767 S.W.2d at 702). Only extrinsic fraud will support a bill of review. *Id.*

Appellant alleges that the MSA was fraudulent because there were ambiguities in the MSA and a failure of consideration. But these are claims of intrinsic fraud because they deal with the merits in the underlying action that supported the judgment and are not matters that occurred outside of the adversarial proceedings. Appellant further claims that the mediator and the mediation process failed to accommodate her disabilities, which should have included an overnight break, and that she should have been given proof by the Department of the wrongdoing of her ex-husband. Again, these are not claims of extrinsic fraud or wrongdoing by the Department; thus, they cannot be used to support her bill of review. Appellant also claims that she was forced to sign the MSA under duress, but she adduced no facts that the Department or anyone else coerced or forced her

10

to sign the MSA. On the contrary, she signed the MSA after she had participated in the mediation, reviewed the proposed agreement with counsel, and received advice from counsel. She then voluntarily signed the MSA, which contained averments that it was signed free of duress and was non-revocable.

But even if Appellant's claims were allegations of extrinsic fraud, which we do not hold, Appellant presented no evidence that she was prevented from presenting a meritorious defense because of the Department's actions. The trial court found that the first time the Department or any of the other litigants became aware of Appellant's claim of hearing impairment or reading impairment was after Sergi was hired to represent Appellant when he presented, on her behalf, his Request for De Novo Review in October 2011, seven months after the mediation. Appellant never informed her counsel, the Department, the mediator, or the trial court of her inability to hear or understand what was going on in the proceedings before, during, or after the mediation.

The trial court further found that Appellant does not use or need hearing aids and that she is of average intelligence and is definitely not stupid or mentally retarded; it also found that she reads and writes the English language at about the fifth grade level. The trial court found that Appellant signed the MSA after receiving advice from counsel and did so of her own free will following her active participation in the mediation. As a result, the trial court correctly held that Appellant presented insufficient evidence of extrinsic fraud or wrongful acts by the Department.

### 2. *Lack of Due Diligence by Petitioner*

The trial court held that Appellant never adduced evidence that explained or provided a reason why she failed to pursue her direct appeal of the associate judge's order of termination. "Ordinarily, a person must 'exercise[ ] due diligence to avail himself of all adequate legal remedies against a former judgment' before

11

filing a bill of review." *Caldwell v. Barnes*, 975 S.W.2d 535, 537 (Tex. 1998) (alteration in original) (quoting *Tice*, 767 S.W.2d at 702).

A party who fails to timely avail itself of available legal remedies is not entitled to relief by bill of review. *Wembley Inv. Co. v. Herrera*, 11 S.W.3d 924, 927 (Tex. 1999) (citing *Caldwell*, 975 S.W.2d at 537). Appellant presented no evidence as to why she failed to pursue an appeal. Appellant could have pursued a direct appeal to this court of the associate judge's order. If Appellant had legal remedies that were available but ignored, relief by equitable bill of review is unavailable. *Garza v. Att'y Gen.*, 166 S.W.3d 799, 818 (Tex. App.—Corpus Christi 2005, no pet.) (citing *Mowbray v. Avery*, 76 S.W.3d 663, 682 (Tex. App.—Corpus Christi 2002, pet. denied)); *see also Wembley Inv. Co.*, 11 S.W.3d at 927.

### 3. *Appellant's Negligence* and *Alleged Negligence of Appellant's Trial Counsel*

Appellant argues that a direct appeal to this court would have been unnecessary if Norman had secured accommodations for her disabilities, advised her properly on the procedures for the case and the effects of the MSA and Rule 11 agreement, and advised her on the deadline for a de novo review of the associate judge's order. Allegations of attorney negligence are not a sufficient ground to support a bill of review. *Transworld Fin. Servs. Corp. v. Briscoe*, 722 S.W.2d 407, 408 (Tex. 1987) (citing *Gracey v. West*, 422 S.W.2d 913 (Tex. 1968)).

The trial court was the factfinder and had the duty of ascertaining the true facts, and it was within the trial court's discretion to judge the credibility of the witnesses and to determine the weight to be given their testimony. A trial judge's findings of fact following a hearing on a bill of review have the same force and effect as jury findings. *Nadolney*, 116 S.W.3d at 279. We review a trial judge's findings of fact in a bill of review proceeding using the same standards we use to review the sufficiency of the evidence to support a jury's answers. *Id.*

Appellant did not testify at the bill of review hearing, other than to waive attorney-client privilege for Norman to testify about the MSA and the Rule 11 agreement. The trial court held that Appellant was not deprived of her right to counsel when Norman did not recognize her disabilities and did not ask for accommodations. The trial court found that Appellant had knowledge of the allegations against her former husband and that Appellant never disclosed her disabilities to Norman, who, in turn, never informed the court of Appellant's limitations. The trial court also found that Norman believed his client understood what she was signing when she signed the MSA and that he would not have let her sign it if she did not understand and agree to it.

The trial court further held that Appellant voluntarily signed the MSA, which was not subject to revocation, and also agreed in open court to the Rule 11 agreement. Further, Appellant agreed in the MSA to end her opposition to the termination proceeding. The trial court held that, although Norman's representation was deficient in several ways, under the totality of the circumstances, the representation did not amount to ineffective assistance of counsel. The trial court held there was insufficient evidence that Appellant was prevented from making a defense through no fault of her own. In fact, Norman's failure to recognize her disabilities was due to her failure to disclose them to him or the court. In reviewing the record, we hold that the trial court did not abuse its discretion when it denied Appellant's bill of review because she failed to show fraud, accident, or wrongful act by the Department unmixed with her own negligence and because Appellant failed to exercise due diligence. Appellant's second and third issues are overruled.

### B. Issue One—Prima Facie Meritorious Defense

Appellant's first issue is unclear as to whether she is (1) claiming the trial court erred with respect to its finding regarding Appellant's prima facie

meritorious defense or (2) challenging the Department's proof in the underlying case.  As to the former, we overrule Appellant's first issue because the trial court found that she had presented a prima facie meritorious defense at the preliminary hearing and then proceeded to hold a bench trial on the merits of her bill of review. If Appellant's argument was the latter, then in light of our holding on Appellant's failure to prove fraud or wrongful act by the Department unmixed with her own negligence and due to her failure to exercise due diligence, we need not address whether the State met its burden on the final element of the bill of review.  *See Wembley Inv. Co.*, 11 S.W.3d at 927 (due diligence in utilizing available remedies); *Baker*, 582 S.W.2d at 409 (proof of fraud, accident, wrongful act, or official mistake unmixed with petitioner's negligence).

### *C. Issue Four—Alleged Error with Docket Entries*

In her final issue, Appellant asserts that Finding of Fact No. 38 relied on minute entries from the clerk that do not comply with Rule 20 of the Texas Rules of Civil Procedure and are void and of no effect because the minutes were not "read, corrected, and signed in open court."  Appellant's argument is meritless because the order of termination, which is in the clerk's record, was signed by the associate judge on May 16, 2011, after he had taken judicial notice of the entire file.  And, in the file, was an e-mail that referenced the Rule 11 agreement and its terms, as well as a handwritten docket entry that referred to the Rule 11 agreement. In addition, the associate judge's order recites that a motion to enforce a Rule 11 agreement was made by the Department and that the motion was granted without objection.  Furthermore, the trial court took judicial notice of the entire file, and its Finding of Fact No. 38 has support in the record.  Appellant's final issue is overruled.

## V. *Conclusion*

Because Appellant failed to use due diligence and was negligent in failing to avail herself of all available remedies before filing her bill of review and because she failed to adduce sufficient evidence of extrinsic fraud, accident, or wrongful act by the Department to support her bill of review, we overrule Issues Two and Three. We also overrule Issue One to the extent it relates to a failure to find that Appellant had presented a prima facie meritorious defense because the trial court so found and held a trial on the merits of the bill of review. To the extent Appellant complained, in Issue One, that the Department failed to prove its case, we need not address that issue in light of our holdings on Issues Two and Three. Finally, we overrule Appellant's Issue Four because the information in Finding of Fact No. 38 had support in the record.

## VI. *This Court's Ruling*

We affirm the order of the trial court.

MIKE WILLSON

JUSTICE

June 12, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.